IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JAMES E. GRIFFIN, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 2:05-CV-1165-T |
| SHERIFF MARSHALL WILLIAMS, JR, et al., | ) |
| Defendants. | ) |

## ANSWER AND SPECIAL REPORT

COME NOW the Defendants in the above-styled matter, Barbour County, Alabama Sheriff Marshall Williams, Jr., and Barbour County, Alabama Jail Administrator Patsy Hall, and submit their Answer and Special Report to the Court as follows:

### I. ANSWER AND AFFIRMATIVE DEFENSES

**A.   Answer**

The Defendants in this action deny each and every allegation made by the Plaintiff, James E. Griffin, and demand strict proof thereof. The Defendants deny that they acted, or caused anyone to act, in such a manner so as to deprive the Plaintiff of any right to which he was entitled during his incarceration in the Barbour County, Alabama Jail.

**B.   Affirmative Defenses**

1.   Plaintiff's Complaint fails to state a claim upon which relief can be granted. Defendant did not deprive Plaintiff of any constitutional right to which he is entitled.

2.   Any claims against Defendant in his official capacity are barred by the Eleventh Amendment and because Defendant is not a "person" under 42 U.S.C. § 1983.

3.   Defendant is entitled to qualified immunity in his individual capacity.

1

4. The Plaintiff's claims are barred due to the Plaintiff's failure to exhaust all available state remedies.

5. The Defendants in this action cannot be held liable under a theory of *respondeat superior* for the acts of subordinates or nonemployees.

6. Defendants reserve the right to add additional defenses upon a complete investigation of Plaintiff's claims, completion of any discovery allowed, and if any further pleading is required or allowed by the Court.

## II. PARTIES

**A.** **Plaintiff**

The Plaintiff in this action, James E. Griffin, is a convicted inmate currently serving a sentence with the State of Alabama Department of Corrections for drug convictions. He has, on at least two occasions, been incarcerated in the Barbour County, Alabama Jail.

**B.** **Defendants**

The Defendants responding herein to the Plaintiff's Complaint are Marshall Williams, Jr., Sheriff of Barbour County, Alabama, and Patsy Hall, officer of the Barbour County, Alabama Sheriff's Department serving as jail administrator at the Barbour County, Alabama Jail.

## III. INTRODUCTION

On December 13, 2005, this Court ordered the Defendants in this action to submit an Answer and Special Report concerning the factual allegations made by the Plaintiff, James E. Griffin, in his Complaint. The Plaintiff's Complaint was filed on December 9, 2005 and contains allegations regarding his incarceration in the Barbour County, Alabama Jail, located in Clayton, Alabama.

## IV. PLAINTIFF'S ALLEGATIONS

The Plaintiff complains that his constitutional rights were violated by the Defendants due to the fact that, while incarcerated in the Barbour County, Alabama Jail, the Defendants placed him in solitary confinement for three days and subjected him to a disciplinary hearing without due process of law.

## V. DEFENDANTS' RESPONSE TO THE PLAINTIFF'S ALLEGATIONS

**A.  Facts**

The Barbour County, Alabama Sheriff's Department operates the Barbour County Jail pursuant to a set of written policies and procedures.  Members of the jail staff are trained, both in-house, and at certified training academies, regarding all aspects of their jobs, including the administration of disciplinary proceedings.  Members of the jail staff are required to be familiar with, and follow the Sheriff's policies and procedures for the operation of the jail, and are trained regarding the policies and procedures, and their day-to-day implementation.

The Barbour County Jail has instituted disciplinary procedures which constitute jail policy. (Affidavit of Marshall Williams, Jr. dated January 19, 2006 (hereafter, "Williams Aff."), attached hereto as Exhibit A and incorporated herein as if fully set forth, at ¶ 9; Affidavit of Patsy Hall dated January 19, 2006 (hereafter, "Hall Aff."), attached hereto as Exhibit B and incorporated herein as if fully set forth, at ¶ 8.)  These procedures are made known to the inmates, and are found in the Inmate Handbook.  Id.  The procedures require that any disciplinary charge be made known in writing to the charged inmate, and such charge is reviewed and evaluated by the Jail Administrator.  Id.  However, the disciplinary policy does not preclude immediate administrative disciplinary action when such action is required for the safety and good order of the jail.  Id.

It is the policy of the Barbour County Jail that no inmate may be confined for punitive purposes for more than 24 hours without being given an opportunity to be heard by a disciplinary board composed of at least two officers and the Jail Administrator. (Williams Aff. at ¶ 10; Hall Aff. at ¶ 9.) However, an inmate may be administratively confined for non-punitive purposes for more than 24 hours without such a hearing if the safety and good order of the jail requires it. Id.

Jail inmates are aware that violation of jail rules will result in consequences. (Hall Aff. at ¶ 10.) A list of possible violations and the corresponding consequences is posted on every jail cell door. Id. Lockdown is usually reserved as a punishment only for violent infractions. Id. Any inmate lockdown is reviewed by the Jail Administrator either immediately or the next following day that the Jail Administrator is "on duty." Id.

"Lockdown," as that term is used in the Barbour County Jail, indicates that the inmate is confined to his cell without a cellmate. (Hall Aff. at ¶ 11.) However, the inmate is not moved to a different cell block, and the locked-down inmate has the ability to interact with other inmates in the cell block through the cell door. Id. There is no disciplinary "solitary confinement" at the Barbour County Jail which contemplates complete isolation from other inmates or jail staff. Id.

The Barbour County Jail does have a small number of holding cells which are located at the front of the jail and isolates an inmate from the other inmates, though not from jail staff. (Hall Aff. at ¶ 12.) These holding cells are typically used for inmate protection and inmates who require close observation by jail staff, i.e. inmates who are at risk of serious injury or death if placed with the general population, suicidal inmates, etc. Id. These holding cells are used strictly for administrative purposes, and never for disciplinary purposes. Id. The Plaintiff has never been placed in a holding cell. Id.

The Plaintiff claims that he was incarcerated in the Barbour County Jail on October 28, 2005. (See Complaint; Inmate file of James Griffin (hereafter, "Inmate File"), attached herewith as Exhibit C and incorporated herein as if fully set forth.) Further, the Plaintiff states that, while incarcerated, he was "engaged in an assumed assault of an officer" at the jail, and thereafter placed in solitary confinement for three days. Id. He alleges that he was taken before a disciplinary team which was not impartial due to the fact that the charging officer also acted as a decision maker. Id. He states that he was given no notice as to why he was placed in solitary confinement, no written statement as to the evidence against him, and was not allowed to call witnesses at the disciplinary hearing. (Complaint.) He is claiming compensatory and punitive damages. Id.

On or about 6:00 p.m. on Friday, October 27, 2005, the Plaintiff assaulted Correctional Officer Steve Kim, knocking him to the ground and injuring him. (Inmate File; Hall Aff. at ¶ 13.) The Plaintiff was subdued and immediately locked down in his cell. Id. At the time he was locked down, the Plaintiff was verbally notified of the charge against him. (Hall Aff. at ¶ 13.) This initial lockdown was intended to prevent further injury to the Plaintiff, other inmates, and the jail staff. Id. Subsequently, a Barbour County Sheriff's Deputy, who is not a correctional officer and does not work at the jail, was assigned the responsibility of investigating the incident. Id.

During the time that the Plaintiff was locked down, he was able to interact with other inmates in his cell block through a peephole in his door, he was able to utilize the cell block shower at a time of his own choosing, and he had continuous access to correctional officers through an intercom system located in his cell. (Hall Aff. at ¶ 14.)

5

On or about Tuesday, October 31, 2005, the Plaintiff was provided with a disciplinary hearing, at which time Correctional Officer Kim and other correctional officers testified as to the events of the previous Friday evening. (Inmate File; Hall Aff. at ¶ 15.) At this time, the Plaintiff was given an opportunity to present a defense. Id. No other witnesses testified at the hearing. Id. The decision-making body at the hearing consisted of Patsy Hall as Jail Administrator, Correctional Officer Darlene Smith, and Correctional Officer Arlene Griglen. Id. Correctional Officer Steve Kim testified, but was not part of the decision-making body. Id.

At the conclusion of the disciplinary hearing, the Plaintiff was "sentenced" to be locked down. (Inmate File; Hall Aff. at ¶ 16.) The Plaintiff was given a written copy of the evidence presented and the hearing results. (Hall Aff. at ¶ 16.) According to posted jail policy, the punishment for assaulting an officer is lockdown for 90 days, in addition to a warrant being sworn out. (Inmate File; Hall Aff. at ¶ 16.) Nevertheless, the Plaintiff was locked down for a total of 13 days, including the three days prior to the disciplinary hearing. (Hall Aff. at ¶ 16.)

As a result of the Plaintiff's assault on Officer Kim, a Warrant of Arrest was sworn out against the Plaintiff for second degree assault, which warrant was executed. (Inmate File; Hall Aff. at ¶ 17.)

Both of the Defendants individually, and in their official capacities, deny that they acted, or caused anyone to act, in such a manner so as to deprive the Plaintiff of any right to which he was entitled, and specifically deny that they acted, or caused anyone to act, in a manner which deprived him with due process of law.

At the time of the Plaintiff's incarceration, the Barbour County Jail had an inmate grievance procedure. (Williams Aff. at ¶ 4; Hall Aff. at ¶ 4.) Grievances were required to be in writing and could be filed with any member of the jail staff. Id. Jail policy provided an

6

exception that allowed emergency grievances to be made orally. Id. Copies of all written grievances were placed in the inmate's file. Id. It was a violation of jail policy to deny an inmate access to the grievance procedure. (Williams Aff. at ¶ 6; Hall Aff. at ¶ 6.) The Plaintiff was aware of the grievance procedure. (Williams Aff. at ¶ 5; Hall Aff. at ¶ 5.) The Plaintiff did not file a grievance with respect to the subject matter of this lawsuit. (Inmate File; Williams Aff. at ¶ 7; Hall Aff. at ¶ 7.)

### B.   Law Relating to the Plaintiff's Allegations

**1.   All official capacity claims against Sheriff Williams and Patsy Hall are barred by the Eleventh Amendment to the United States Constitution.**

The Plaintiff's official capacity claims against Sheriff Williams and Patsy Hall are due to be dismissed for lack of subject matter jurisdiction. Each Defendant, in his or her capacity as Sheriff, or Sheriff's officer, of Barbour County, Alabama, is an executive officer of the State of Alabama. Therefore, a suit against these Defendants in their official capacities is a suit against the State of Alabama. See Hafer v. Melo, 502 U.S. 21, 25 (1991); see also Kentucky v. Graham, 473 U.S. 159, 165-66 (1985). Because this suit is, in effect, a suit against the State of Alabama, the Eleventh Amendment to the United States Constitution bars the Plaintiff's claims under 42 U.S.C. § 1983. Dean v. Barber, 951 F.2d 1210, 1215 n.5 (11th Cir. 1992); Carr v. City of Florence, 918 F.2d 1521, 1525 (11th Cir. 1990) (citing Parker v. Williams, 862 F.2d 1471, 1476 (11th Cir. 1989), upholding the proposition that a deputy sued in his official capacity is entitled to Eleventh Amendment immunity). Thus, this Court lacks subject matter jurisdiction over these claims.

**2.   The Defendants, in their official capacities, are not "persons" for purposes of 42 U.S.C. § 1983.**

42 U.S.C. § 1983 prohibits a person, acting under color of law, from depriving another of his rights secured by the United States Constitution.  42 U.S.C. § 1983.  The United States Supreme Court has held that a state official sued in his or her official capacity is not a "person" under § 1983.  Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).  Thus, any claims against Sheriff Williams or Patsy Hall in their official capacities, are due to be dismissed because said Defendants are not "persons" under § 1983, and therefore, these claims fail to state a claim upon which relief may be granted.  Carr, 916 F.2d at 1525 n.3 (citing Will and noting that, in addition to entitlement to Eleventh Amendment immunity, "neither a State nor its officials acting in their official capacities are a 'person' under § 1983").

### 3. The Defendants are entitled to qualified immunity.

In their individual capacities, all the Defendants are entitled to qualified immunity and a dismissal of the Plaintiff's claims against them unless they violated his clearly established constitutional rights, of which a reasonable person would have known.  Lancaster v. Monroe County, 116 F.3d at 1429 (1998).  Qualified immunity is a protection designed to allow government officials to avoid the expense and disruption of trial.  Ansley v. Heinrich, 925 F.2d 1339, 1345 (11th Cir. 1991).  The Eleventh Circuit Court of Appeals has observed, "[t]hat qualified immunity protects governmental actors is the usual rule; only in exceptional cases will government actors have no shield against claims made against them in their *individual capacities*."  Lassiter v. Alabama A&M Univ., 28 F.3d 1146 (11th Cir. 1994) (en banc) (emphasis in original) (footnote omitted).  In the light of pre-existing law the unlawfulness must be apparent.  Anderson v. Creighton, 483 U.S. 635, 640 (1987).  Mere statements of broad legal truisms, without more, are not sufficient to overcome qualified immunity.  Post v. City of Ft. Lauderdale, 7 F.3d 1552, 1557 (11th Cir. 1993).

8

Once a defendant has asserted the defense of qualified immunity, the threshold inquiry a court must undertake is whether the plaintiff's allegations, if true, establish a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). This initial inquiry is whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)). The second inquiry is, if a constitutional violation is stated, were these rights "clearly established" to the degree that these Defendants had "fair warning" that their conduct violated the plaintiff's constitutional rights? Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003).

In making an assessment of whether the particular conduct of these Defendants was clearly established as being violative of constitutional dictates, the reviewing court must examine the state of law at the time the alleged deprivation occurred. See Rodgers v. Horsley, 39 F.3d 308, 311 (11th Cir. 1994). A constitutional right is clearly established only if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson, 483 U.S. at 640; Lancaster, 116 F.3d at 1424. "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." Jenkins v. Talladega Bd. of Educ., 115 F.3d 821, 827 (11th Cir. 1997) (en banc) (citations omitted).

The Plaintiff has failed to allege, and the facts do not support, that the Defendants violated the Plaintiff's federally protected rights. In the instant case, the Plaintiff alleges that he was denied due process of law in relation to being placed in solitary confinement and a

subsequent disciplinary hearing. As neither Sheriff Williams nor Patsy Hall is specifically accused of doing anything wrong,[1] it is unclear why they have been sued.

The Defendants here are entitled to judgment in their favor as a matter of law on these claims for three reasons. First, the Plaintiff cannot show a constitutional violation. Second, the supervisory Defendants did not promulgate policies that caused the Plaintiff's alleged constitutional deprivations. Third, no clearly established law provided these Defendants with "fair warning" that their conduct was unlawful.

### (a) The Defendants did not violate any of Plaintiff's federally protected constitutional rights.

The Plaintiff cannot meet his first burden under the qualified immunity standard – he cannot show a violation of his federal rights. Sheriff Williams and Patsy Hall are therefore entitled to qualified immunity for three reasons. First, Defendants cannot be held liable on a theory of *respondeat superior*. Second, there are no allegations of any wrongdoing on the part of either Defendant. Third, there is no causal connection between the policies promulgated by Defendants and the Plaintiff's alleged injuries.[2]

#### (1) *Respondeat Superior* cannot serve as a basis for § 1983 liability.

To the extent the Plaintiff seeks to impose vicarious liability on Sheriff Clark, his claims are due to be dismissed. As noted previously, vicarious liability is not permitted under § 1983. See Monell, 436 U.S. at 691.

---

[1] Though named as Defendants, neither Sheriff Williams nor Patsy Hall appears anywhere in the Plaintiff's Statement of Facts.
[2] This reference to the Plaintiff's injuries is solely for the purpose of addressing the Qualified Immunity standard. The Plaintiff has failed to allege any actual injury.

**(2)** **There is no allegation of any personal wrongdoing on the part of Sheriff Williams or Patsy Hall.**

The Plaintiff has essentially alleged two types of constitutional violations in his Complaint. He asserts that his placement in solitary confinement without notice, the failure of jail officials to provide him with written notice concerning the evidence against him in a jail disciplinary hearing, and his inability to examine witnesses at that hearing, violated his due process and equal protection rights.

"Maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." Bell v. Wolfish, 441 U.S. 520, 546 (1979). Only when there is loss of a protected liberty interest will [] due-process protections be implicated." Ward v. State, No. CR-04-1320, 2005 WL 2046385 at *2 (Ala. Crim. App. Aug. 26, 2005).

The Plaintiff's solitary confinement for thirteen days does not violate any due process or equal protection right under the United States Constitution. State action taken against a prisoner for punitive reasons does not encroach upon that prisoner's liberty interests under the due process clause in the absence of state regulation. Sandin v. Conner, 515 U.S. 472, 484 (1995). Segregated confinement does not present the type of atypical, significant deprivation in which the State creates a liberty interest. Id. In this case, however, the Plaintiff was not even placed in segregated confinement; he was not segregated from the rest of the cell block population, but was able to interact with them through the window and slot on the cell door. In fact, the Plaintiff's confinement was less burdensome than the administrative segregation that the jail imposes on other, non-disciplinary inmates. The Supreme Court has held that such discipline does not present a deprivation which creates a liberty interest. Id.

Further, the Plaintiff's inability to examine witnesses during his disciplinary hearing did not violate his equal protection or due process rights. "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539 (1974). In particular, the United States Supreme Court has held that the Constitution does not impose a requirement of confrontation and cross-examination in prison disciplinary hearings. Id. at 567-68.

As previously noted, the Plaintiff's statement of the facts is devoid of any reference to Sheriff Williams or Patsy Hall. Furthermore, the uncontroverted evidence demonstrates that Sheriff Williams was not present during any of the events set out in the Plaintiff's Complaint. (Williams Aff. at ¶ 3). Additionally, the Plaintiff's own actions are at the heart of many of his complaints. For example, the Plaintiff admits in his Complaint that he "was engaged in an assumed assault of an officer . . . at the Barbour County Jail." (Complaint at ¶ 5.)

Based upon the foregoing the Plaintiff has failed to allege a violation of his federally protected rights – let alone a violation personally committed by Sheriff Williams or Patsy Hall. Therefore, the Defendants are entitled to qualified immunity and judgment as a matter of law on the Plaintiff's claims.

      **(b)**    **The policies and customs of the Barbour County Sheriff's Department did not cause the Plaintiff's alleged injuries.**

The Eleventh Circuit applies a three-prong test that the Plaintiff must satisfy to establish supervisory liability: (1) the supervisor's actions, either in training, promulgating policy, or otherwise, were deliberately indifferent to the Plaintiff's rights; (2) a reasonable person in the supervisor's position would know that his or her actions were deliberately indifferent; and (3) the supervisor's conduct was causally related to the subordinate's constitutional infringement. Greason v. Kemp, 891 F.2d 829, 836-37 (11th Cir. 1990); see also Brown v. Crawford, 906 F.2d

667, 671 (11th Cir. 1990) (citations omitted). Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates "on the basis of *respondeat superior* or vicarious liability." Belcher v. City of Foley, 30 F.3d 1390, 1396 (11th Cir. 1994) (citation and quotation omitted). The causal connection may be established where the supervisor's improper "custom or policy . . . result[s] in deliberate indifference to constitutional rights." Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991) (citing Zatler v. Wainwright, 802 F.2d 397 (11th Cir. 1986)). "[T]he inadequacy of police training may serve as the basis for § 1983 liability *only* where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989) (emphasis added). The Complaint fails to allege facts supporting either of these elements, and there is no evidence to support the allegations even if they were made.

Both of the Defendants in this matter can be deemed to be supervisors for purposes of the Plaintiff's action. The Plaintiff has not alleged that these Defendants personally played any role in the alleged deprivation of due process and equal protection. Furthermore, the Plaintiff has also not made any allegations with respect to training deficiencies in the jail staff. Accordingly, the only way the Plaintiff may state a claim against the supervisory Defendants is in their roles as policymakers for the jail. See Crawford, 906 F.2d at 671.

As specifically related to the Plaintiff's Complaint, Sheriff Williams and members of his staff have put into place procedures for disciplinary actions against inmates. These procedures include: (a) providing advance notice to inmates concerning jail rules and regulations, disciplinary procedures, and specific consequences of infractions; (b) strict limitations on inmate lockdown, including administrative review and disciplinary hearings; and (c) notice of disciplinary charges and impartial disciplinary hearings. All of these procedures have been

found to be constitutional. Wolff v. McDonnell, 418 U.S. 539 (1974). An official cannot be held liable just for instituting a facially constitutional policy. See City of Canton v. Harris, 489 U.S. 378, 387 (1989). The policies put in place by these Defendants are constitutionally sound and did not cause the Plaintiff's alleged injuries.

Taking the Plaintiff's Complaint at face value, he does not, in effect, argue with the jail's policies and procedures. He argues with the results.

        **c.**    **No clearly established law provided these Defendants with "fair warning" that their conduct was unlawful.**

Before stripping an official of qualified immunity, clearly established law must provide "fair warning" to the official that his or her conduct was illegal. Willingham, 321 F.3d at 1301. As previously made plain, the conduct of these Defendants was in accordance with clearly established law. As the Plaintiff cannot show a constitutional violation of clearly established law, these Defendants are entitled to qualified immunity. See Saucier, 533 U.S. at 201.

**C.**    **Summary Judgment Standard.**

On a motion for summary judgment, the court should view the evidence in the light most favorable to the nonmovant. Greason, 891 F.2d at 831. However, a plaintiff "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Only reasonable inferences with a foundation in the record inure to the nonmovant's benefit. See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000). "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" Reeves, 530 U.S. at 151, quoting 9A C. Wright & A. Miller, Federal Practice and Procedure §

2529, p. 299.[3]  "A reviewing court need not 'swallow plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited.'"  Marsh v. Butler County, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (en banc) quoting Massachusetts School of Law v. American Bar, 142 F.3d 26, 40 (1st Cir. 1998).

### V.  MOTION FOR SUMMARY JUDGMENT

The Defendants respectfully request that this honorable Court treat their Answer and Special Report as a Motion for Summary Judgment, and grant unto them the same.

Respectfully submitted this 20th day of January, 2006.

**s/Scott W. Gosnell**
SCOTT W. GOSNELL – Bar No. GOS002
Attorney for Defendants Sheriff Marshall
Williams, Jr. and Patsy Hall
WEBB & ELEY, P.C.
7475 Halcyon Pointe Road
P.O. Box 240909
Montgomery, Alabama  36124
Telephone:  (334) 262-1850
Fax:  (334) 262-1889
E-mail:  sgosnell@webbeley.com

---

[3] Although Reeves was a review of a motion for judgment as a matter of law after the underlying matter had been tried, the Supreme Court, in determining the proper standard of review relied heavily on the standard for summary judgment stating, "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'"  Reeves, 530 U.S. at 150, citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-251 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

**CERTIFICATE OF SERVICE**

 I hereby certify that on this the 20th day of January, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and that I have mailed by United States Mail, postage prepaid, to the following non-CM/ECF participant:

James E. Griffin
Barbour County Jail
24 Robertson Airport Road
Clayton, Alabama  36016

        **s/Scott W. Gosnell**
        OF COUNSEL